UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARTHA'S VINEYARD/DUKES )
COUNTY FISHERMEN'S )
ASSOCIATION )
 )
and ) Civil Case No. 10-1580 (RJL)
 )
MICHAEL S. FLAHERTY, )
 )
       Plaintiffs, )
 )
v. )
 )
GARY LOCKE, in his official capacity )
as Secretary of the Department of )
Commerce, *et al.* )
 )
       Defendants. )

MEMORANDUM OPINION
(September 15, 2011) [#25]

Plaintiffs Martha's Vineyard/Dukes County Fishermen's Association ("the Association") and Michael S. Flaherty (collectively "plaintiffs") brought an action challenging the management of river herring and shad along the East Coast of the United States against two sets of defendants: (1) United States Secretary of Commerce Gary Locke, the National Oceanic and Atmospheric Administration ("NOAA"), and the National Marine Fisheries Service ("NMFS" or "Fisheries Service") (collectively, "Federal defendants"); and (2) the Atlantic States Marine Fisheries Commission ("ASMFC"), along with individual citizens acting in their official capacity as Commissioners of the ASMFC (collectively, "State defendants"). Plaintiffs allege that

1

the Federal defendants' actions and failures to act, which they contend have caused the populations of river herring and shad to decline, violated the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act"), the Administration Procedure Act ("APA"), and the Atlantic Coastal Fisheries Cooperative Management Act ("Atlantic Coastal Fisheries Act"). The Federal defendants have moved to dismiss plaintiffs' complaint. After due consideration of the law and pleadings, the Federal defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

*I.   Statutory Background*

*A. The Magnuson-Stevens Act*

The Magnuson-Stevens Act was enacted in 1976, Pub. L. 94-265, 90 Stat. 331, *as amended*, 16 U.S.C. §§ 1801-1883, "to take immediate action to conserve and manage the fishery resources found off the coasts of the United States" and "to promote domestic commercial and recreational fishing under sound conservation and management principles." 16 U.S.C. §§ 1801(b)(1), (3). The Act created eight independent regional Fishery Management Councils ("Councils") "to exercise sound judgment in the stewardship of fishery resources." *Id.* § 1801(b)(5), 1852(a). "Each Council is granted authority over a specific geographic region and is composed of members who represent the interests of the states included in that region." *C&W Fish Co. v. Fox*, 931 F.2d 1556, 1557-58 (D.C. Cir. 1991) (citing 16 U.S.C. § 1852).

Under the statute, the Councils are required to prepare a fishery management plan ("FMP") for each fishery that requires conservation and management. 16 U.S.C. §§

2

1851-1854. NMFS, a federal agency and a division of NOAA and the Department of Commerce, reviews and approves the proposed FMPs to ensure they are consistent with the ten national standards set forth in the Magnuson-Stevens Act.[1] *Id.* If the appropriate Council fails to develop a FMP with respect to any fishery, the Secretary of Commerce may prepare a FMP ("Secretarial FMP") with respect to such fishery. *Id.* § 1854(c). Further, if the Secretary "finds that an emergency exists or that interim measures are needed to reduce overfishing for any fishery, he may promulgate emergency regulations or interim measures necessary to address the emergency or overfishing, without regard to whether a fishery management plan exists for such fishery." *Id.* § 1855(c)(1).

### B. The Atlantic Coastal Fisheries Act

In 1993, Congress adopted the Atlantic Coastal Fisheries Act, 16 U.S.C. §§ 5101-5108, "to support and encourage the development, implementation, and enforcement of effective interstate conservation and management of the Atlantic coastal fishery resources." 16 U.S.C. § 5101(b). Congress enacted this statute in response to concerns regarding "disparate, inconsistent, and intermittent State and Federal regulation that has been detrimental to the conservation and sustainable use" of coastal fishery resources. *Id.* § 5101(a)(3). Congress sought to promote the conservation of "[c]oastal fishery

---

[1] NOAA is an agency of the Department of Commerce, which delegated to NOAA supervisory responsibility for NMFS. Compl. ¶ 13. NOAA, in turn, delegated to NMFS the responsibility to review FMPs. *Id.* ¶ 14. Plaintiffs raise claims related to three of the ten national standards—Standards One, Two, and Nine. The three relevant national standards provide that conservation and management measures shall "prevent overfishing while achieving, on a continuing basis, optimum yield" (Standard One); "be based on the best scientific information available" (Standard Two); and "to the extent practicable, (a) minimize bycatch and (b) to the extent bycatch cannot be avoided, minimize the mortality of such bycatch" (Standard Nine). 16 U.S.C. §§ 1851(1), (2), (9).

3

resources that migrate, or are widely distributed, across the jurisdictional boundaries of two or more of the Atlantic States and of the Federal Government." *Id.* § 5101(a)(1).

The Atlantic Coastal Fisheries Act clearly defines the responsibilities of the States and Federal government. Under the Act, the "responsibility for managing Atlantic coastal fisheries rests with the States, which carry out a cooperative program of fishery oversight and management through the [ASMFC]." 16 U.S.C. § 5101(a)(4). "It is the responsibility of the Federal Government to support such cooperative interstate management of coastal fishery resources." *Id.* The ASMFC works jointly with the Councils established under the Magnuson-Stevens Act to create coastal fishery management plans (also called an "interstate FMP" or "IFMP") complementary to those prepared by the Councils regulating the same species in federal waters. *See id.* § 5104(a)(1). In the absence of a FMP created by the Councils, and after consultation with the Councils, "the Secretary may implement regulations to govern fishing in the exclusive economic zone [of the United States]" that are compatible with an IFMP and consistent with the national standards set forth in the Magnuson-Stevens Act. *Id.* § 5103(b).

*II. Factual Background*

Plaintiff Martha's Vineyard/Dukes County Fishermen's Association is comprised of fishermen and "other active participants in local, state, regional and federal fisheries management, with direct interests in maintaining abundant populations of river herring and shad." Amended Complaint ("Compl.") ¶ 10. River herring and shad are anadromous species of herring that are born in fresh water and then migrate to the ocean

4

before returning to the fresh water where they were born in the spring and early summer to spawn.[2] *Id.* ¶¶ 10, 20. The Association has observed a "drastic decline" in the number of river herring that return to Dukes County. *Id.* ¶ 10. River herring and shad often swim in mixed-stock schools of fish, including Atlantic herring or mackerel. *Id.* ¶¶ 10, 32. Industrial mid-water trawlers who use small mesh nets to target other species, such as the Atlantic herring or mackerel, regularly catch as bycatch river herring and shad, which are discarded dead at sea. *Id.* ¶ 33. Plaintiffs contend the decline correlates to the increase of mid-water trawling for herring and mackerel. *Id.* ¶ 10. The Association and its members rely upon the river herring and shad as part of their economic base. *Id.*

Michael Flaherty is a recreational fisherman from Massachusetts, and is a former Vice President of the Massachusetts Striped Bass Association. Compl. ¶ 11. He has been a recreational fisherman for over thirty-five years. *Id.* Striped bass is a species that thrives when it consumes river herring. *Id.* In the past, Flaherty has fished for river herring to use as bait or consume as food. *Id.* Previously, he was able to fish at his local river herring run and was allowed to catch up to forty-eight fish per week. *Id.* Because the Commonwealth of Massachusetts has banned the harvesting of river herring, Flaherty's fishing days for them are over. *Id.*

Plaintiffs first filed this lawsuit on September 20, 2010, and they then filed an amended complaint on December 13, 2010. On January 14, 2010, the Federal defendants

---

[2] "River herring" is the collective term for two species of fish—the alewife and the blueback herring—because the two species are difficult to distinguish from each other and are managed as a single stock. Compl. ¶ 17. Similarly, "shad" is the collective term for two species of fish—the American shad and the hickory shad. Compl. ¶ 19.

filed a motion to dismiss Counts One and Two of plaintiffs' amended complaint. For the following reasons, the Federal defendants' motion is GRANTED.

## STANDARD OF REVIEW

A court may dismiss a complaint, or any portion of it, that does not fall within the court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where a motion to dismiss under Rule 12(b)(1) makes a facial attack on the complaint, the reviewing court "must accept as true all material allegations on the complaint, and must construe the complaint in favor of the complaining party." *Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Circuit 2009) (internal citation and quotation marks omitted). "Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

A court may also dismiss a complaint, or any portion of it, for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, however, the court may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). To survive a motion to dismiss, a complainant must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009). In evaluating a Rule 12(b)(6) motion, the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that

6

can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks omitted). However, factual allegations, even though assumed to be true, must still "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## LEGAL ANALYSIS

Plaintiffs make several allegations against the Federal defendants. In their first claim, plaintiffs allege that: (1) the NMFS violated the Magnuson-Stevens Act by failing to prepare or implement a FMP for river herring and shad that contains measures that prevent overfishing and minimize or avoid bycatch, as well as by failing to monitor the fisheries that kill river herring, *see* Compl. ¶ 108; and (2) the Secretary violated the Magnuson-Stevens Act by failing to use his emergency authority under 16 U.S.C. § 1855(c) to enact regulations to prevent overfishing, *see* Compl. ¶ 110. In their second claim, plaintiffs allege that the Federal defendants violated the Atlantic Coastal Fisheries Act and the APA by failing to: (1) enact regulations in the EEZ for river herring and shad, *see* Compl. ¶ 116; and (2) support the ASMFC and state coastal fisheries programs to address bycatch of river herring in federal fisheries, *see* Compl. ¶ 117.

The Federal defendants contend that this court lacks jurisdiction over plaintiffs' first and second claims for relief because the claims are time-barred under the Magnuson-

7

Stevens Act. Defs.' Mot. to Dismiss ("Defs.' Mot.") at 8, Jan. 14, 2011. Specifically, the Federal defendants contend that plaintiffs failed to file their lawsuits within thirty-days of the promulgation of the challenged rules, as required under the Magnuson-Stevens Act.[3] Defs.' Mot. at 8. The Magnuson-Stevens Act provides that regulations promulgated by the Secretary under the Act shall be subject to judicial review if challenged "within 30 days after the date on which the regulations are promulgated or the action is published in the Federal Register, as applicable." 16 U.S.C. § 1855(f)(1).

Although plaintiffs do not invoke the judicial review provision of the Magnuson-Stevens Act, it is clear from the face of the Complaint that their allegations, in substance, are challenges to the existing FMPs for Atlantic herring, squid, mackerel, and butterfish fisheries, where river herring and shad are caught.[4] At the heart of plaintiffs' argument is their contention that the Federal defendants have failed to address minimizing bycatch and preventing overfishing of river herring and shad in their implementation of these FMPs for the Atlantic herring, squid, mackerel, and butterfish fisheries.[5] *See* Compl. ¶ 4

---

[3] The final rules implementing the most recent amendments to the FMPs for Atlantic herring and squid, mackerel and butterfish were published on: January 28, 2008 (Atlantic herring) and March 11, 2010 (squid, mackerel, and butterfish).

[4] As other circuits have held,
> Invocation of the magic words, "the Magnuson Act," is not a predicate to application of §1855(f) if the substance of the challenge is to the regulations themselves. Notably, § 1855(f) does not state that challenges "under the Magnuson Act" must be brought within thirty days, but instead that judicial review of "*[r]egulations promulgated by the Secretary* under the [Magnuson Act]" must brought within the stated time limit.

*Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 438 F.3d 937, 944 (9th Cir. 2006).

[5] National Standard One provides that the requirement for Annual Catch Limits ("ACLs") in a FMP applies to all stock in a fishery, including non-target species caught as bycatch.

8

(Federal defendants have "failed to manage river herring and shad as stocks in any other FMPs including Atlantic herring and mackerel (the Atlantic herring FMP and the Squid Mackerel Butterfish FMP)."); *id.* ¶ 10 ("Because river herring often swim in schools where they mix with Atlantic herring or mackerel, midwater trawl fishing vessels have the potential to wipe out an entire river's herring run by netting all of the school that make up a single run in the ocean."); *id.* ¶ 23 (In the ocean, [river herring and shad] are killed in vast numbers as bycatch in directed fisheries for other fish – including particularly as bycatch in trawl fisheries for Atlantic herring and mackerel); *id.* ¶ 34 ("Bycatch in these fisheries is poorly monitored, reported, and regulated."); *id.* ¶ 36 ("Bycatch of river herring in the New England Atlantic herring fishery alone can equal or exceed all directed fishery landings, contributing 50% or more to the total known fishing morality."); *id.* ¶ 86 ("There is no federal FMP for shad and river herring, and the Fisheries Service failed to adopt ACLs and [accountability measures] for river herring and shad in other FMPs that regulate fisheries where the stocks are caught, landed and sold (Atlantic herring fishery and Squid, Mackerel and Butterfish fishery)."); *id.* ¶ 88 "Scientists on the [New England Fishery Management Council] Atlantic Herring Plan Development Team have recognize[d] that 'bycatch is the one impact on river herring that is unmanaged and unmitigated.'"); *id.* ¶ 90 (Councils "have adopted no species-specific measures, such as a catch limit, in any federal FMPs for fisheries where river herring and shad bycatch is occurring."); *id.* ¶ 108 (The Fisheries Service's "failures

---

50 C.F.R. §§ 600.310(d)(2-4), 600.310(f)(2). The Magnuson-Stevens Act requires that these ACLs be set at a level such that overfishing does not occur in the fishery. *See* 16 U.S.C. § 1853(a)(15).

include a failure to monitor the fisheries that kill river herring and shad."); *id.* ¶ 110 ("The Secretary also has failed to use his emergency authority under § 1855(c) to enact regulations to promulgate emergency regulations or interim measures to address the emergency or overfishing occurring in the fisheries that kill river herring and shad."); *id.* ¶ 117 (The Federal defendants have failed "to address bycatch of river herring in federal fisheries."). Unfortunately for the plaintiffs, the regulations implementing the most recent amendments to these FMPs were published over thirty-days prior to the filing of this Complaint. The final rules implementing the most recent amendments to the FMPs for Atlantic herring and squid, mackerel and butterfish were published on: January 28, 2008 (Atlantic herring) and March 11, 2010 (squid, mackerel, and butterfish). Plaintiffs filed their original complaint on September 20, 2010. Plaintiffs have thus failed to file their lawsuit within thirty-days of the publication of these regulations implementing those FMPs and their most recent amendments.

Although plaintiffs also directly challenge the failure of the Federal defendants to minimize bycatch and overfishing of the river herring and shad in these other fisheries, plaintiffs attempt, through artful pleading, to avoid the limitations period of the Magnuson-Stevens Act by also raising general allegations of "failure to manage" river herring and shad under the Magnuson-Stevens Act and the Atlantic Coastal Fisheries Act.[6] Compl. ¶¶ 39, 108. However, as other Circuit Courts have held, parties cannot avoid this limitations period through careful pleading where, in substance, the parties are

---

[6] There is no federal FMP for river herring and shad. These species are managed by the ASMFC's IFMP. Compl. ¶ 63.

challenging existing regulations. *See Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 438 F.3d 937, 945 (9th Cir. 2006); *see also Sea Hawk Seafoods v. Locke*, 568 F.3d 757, 765 (9th Cir. 2009). Plaintiffs' general allegations are inextricably intertwined with grievances with respect to the Federal defendants' management of—specifically, the FMPs for—the Atlantic herring, squid, mackerel, and butterfish fisheries. These underlying challenges pertain to the Federal defendants' actions and inactions with respect to those FMPs. Therefore, the Federal defendants' Motion to Dismiss is GRANTED because plaintiffs' first and second claims are time-barred under the Magnuson-Stevens Act.[7]

---

[7] Even assuming plaintiffs' general claims that the Federal defendants failed to promulgate regulations pertaining to river herring and shad are separate from claims relating to the FMPs of the other fisheries (such as the claims pertaining to the regulation of bycatch in those fisheries), those claims are dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Plaintiffs contend the that (1) NMFS failed to prepare an FMP for river herring and shad; (2) the Secretary failed to use his emergency authority under 16 U.S.C. § 1855(c) to enact regulations to prevent overfishing; and (3) the Federal defendants failed to enact regulations in the EEZ for river herring and shad. *See* Compl. ¶¶ 108, 110, 116. Although authorized to promulgate such regulations, the Federal defendants' power to do so is discretionary. *See* 16 U.S.C. § 1854(c) ("The Secretary *may* prepare a fishery management plan, with respect to any fishery . . . if . . . the appropriate Council fails to develop and submit to the Secretary, after a reasonable period of time, a fishery management plan for such fishery.") (emphasis added); 16 U.S.C. § 1855(c) ("If the Secretary finds that an emergency exists or that interim measures are needed to reduce overfishing for any fishery, he *may* promulgate emergency regulations or interim measures necessary to address the emergency or overfishing, without regard to whether a [FMP] exists for such fishery.") (emphasis added); 16 U.S.C. § 5103(b) ("In the absence of an approved and implemented [FMP] under the [Magnuson-Stevens Act], and after consultation with the appropriate Councils, the Secretary *may* implement regulations to govern fishing in the exclusive economic zone.") (emphasis added). The Federal defendants are in no way required to promulgate plaintiffs' requested regulations. Thus, plaintiffs have failed to identify a discrete agency action that the Federal defendants were

## CONCLUSION

For the foregoing reasons, the Federal defendants' Motion to Dismiss, ECF No. 25, is GRANTED. An appropriate order will accompany this memorandum opinion.

RICHARD J. LEON
United States District Judge

---

*legally required* to take. *See* Compl. ¶ 6 (alleging that the court has jurisdiction pursuant to the APA); 5 U.S.C. § 706(1). Therefore, these claims must be dismissed.