## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARTHA'S VINEYARD/DUKES** ) <br> **COUNTY FISHERMEN'S** ) <br> **ASSOCIATION** ) <br> ) <br> **and** ) <br> ) <br> **MICHAEL S. FLAHERTY,** ) <br> ) <br>      **Plaintiffs,** ) <br> ) <br>      **v.** ) <br> ) <br> **GARY LOCKE, in his official capacity** ) <br> **as Secretary of the Department of** ) <br> **Commerce, *et al.*** ) <br> ) <br>      **Defendants.** ) <br> ) | **Civil Case No. 10-1580 (RJL)** |

## MEMORANDUM OPINION
### (September 1 5 , 2011) [#26]

Plaintiffs Martha's Vineyard/Dukes County Fishermen's Association ("the

Association") and Michael S. Flaherty (collectively "plaintiffs") brought an action

challenging the management of river herring and shad along the East Coast of the United

States against two sets of defendants: (1) United States Secretary of Commerce Gary

Locke, the National Oceanic and Atmospheric Administration ("NOAA"), and the

National Marine Fisheries Service ("NMFS" or "Fisheries Service") (collectively,

"Federal defendants"); and (2) the Atlantic States Marine Fisheries Commission

("ASMFC"), along with individual citizens acting in their official capacity as

Commissioners of the ASMFC (collectively, "State defendants"). Plaintiffs allege that the State defendants violated the Atlantic Coastal Fisheries Cooperative Management Act ("Atlantic Coastal Fisheries Act"), the ASMFC Compact and Charter, and the Administrative Procedure Act ("APA") by failing to adopt adequate measures to protect river herring and shad. The State defendants have moved to dismiss plaintiffs' complaint. After due consideration of the law and pleadings, the State defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

I.    *Statutory Background*

A.  *The ASMFC Compact*

In 1942, Congress approved the ASMFC Compact, an agreement among the fifteen Atlantic coastal states, which formed the ASMFC. Pub. L. No. 77-539, 56 Stat. 267 (1942), *amended by* Pub. L. No. 81-721, 64 Stat. 467 (1950); *see also* U.S. CONST. art. I, § 10, cl. 3. The purpose of the Compact is "to promote the better utilization of the fisheries, marine, shell and anadromous, of the Atlantic seaboard by the development of a joint program for the promotion and protection of such fisheries, and by the prevention of the physical waste of the fisheries from any cause." ASMFC Compact, art. I. The Compact provides that it shall not "be construed to limit the power of any signatory state or to repeal or prevent the enactment of any legislation or the enforcement of any requirement by any signatory state imposing additional conditions and restrictions to conserve its fisheries." *Id*. art. IX.

Each of the Commission's fifteen member States appoints three representatives—the Commissioners—to the ASMFC: (1) the State's marine fisheries director; (2) a State legislator; and (3) a public member with fisheries experience who is appointed by the State's Governor. ASMFC Compact, art. III. The Commission has the "power to recommend the coordination of the exercise of the police powers of the several states within their respective jurisdictions to promote the preservation" of fisheries, and to draft and recommend legislation to member States. *Id.* art. IV. The Commission promulgates fishery management plans ("FMP") for inter-jurisdictional fisheries, which plans are then implemented by the respective member States. *See Medeiros v. Vincent*, 431 F.3d 25, 27-28 (1st Cir. 2005). The ASMFC has promulgated FMPs for river herring and shad, the fish species at issue in this case. *See* Amended Complaint ("Compl.") ¶ 15.

*B. The Atlantic Coastal Fisheries Act*

In 1993, Congress adopted the Atlantic Coastal Fisheries Act, 16 U.S.C. §§ 5101-08 (2006), "to support and encourage the development, implementation, and enforcement of effective interstate conservation and management of the Atlantic coastal fishery resources." 16 U.S.C. § 5101(b) (2006). Congress sought to promote the conservation of "[c]oastal fishery resources that migrate, or are widely distributed, across the jurisdictional boundaries of two or more of the Atlantic States and of the Federal Government." *Id.* § 5101(a)(1). Congress enacted this statute in response to concerns regarding "disparate, inconsistent, and intermittent State and Federal regulation that has been detrimental to the conservation and sustainable use" of coastal fishery resources. *Id.*

3

§ 5101(a)(3). Indeed, Congress adopted the Act "to give the ASMFC some 'teeth.'"
*New York v. Atlantic States Marine Fisheries Comm'n*, 609 F.3d 524, 529 (2d Cir. 2010).

The Atlantic Coastal Fisheries Act clearly defines the responsibilities of the States
and Federal government. Under the Act, the "responsibility for managing Atlantic
coastal fisheries rests with the States, which carry out a cooperative program of fishery
oversight and management through the [ASMFC]." 16 U.S.C. § 5101(a)(4) (2006). "It is
the responsibility of the Federal Government to support such cooperative interstate
management of coastal fishery resources." *Id.* The ASMFC works jointly with regional
Fishery Management Councils established under the Magnuson-Stevens Fishery
Conservation and Management Act ("Magnuson-Stevens Act"), Pub. L. No. 94-265, 90
Stat. 331 (1976), *amended by*, 16 U.S.C. §§ 1801-91 (2006), to create coastal fishery
management plans (also called an "interstate FMP" or "IFMP") complementary to those
prepared by the Councils regulating the same species in federal waters. *See id.* §
5104(a)(1).

   *C.  The Magnuson-Stevens Act: Federal Fisheries Management*

The Magnuson-Stevens Act was enacted in 1976 "to take immediate action to
conserve and manage the fishery resources found off the coasts of the United States" and
"to promote domestic commercial and recreational fishing under sound conservation and
management principles." 16 U.S.C. §§ 1801(b)(1), (3) (2006). The Act created eight
federal independent regional Fishery Management Councils "to exercise sound judgment
in the stewardship of fishery resources." *Id.* § 1801(b)(5), 1852(a). "Each Council is
granted authority over a specific geographic region and is composed of members who

4

represent the interests of the states included in that region." *C&W Fish Co. v. Fox*, 931 F.2d 1556, 1557-58 (D.C. Cir. 1991) (citing 16 U.S.C. § 1852).

Under the statute, the Councils are required to prepare a FMP for each fishery in federal waters that requires conservation and management. 16 U.S.C. §§ 1851-54 (2006). NMFS, a federal agency and a division of NOAA and the Department of Commerce, reviews and approves the proposed FMPs to ensure they are consistent with the ten national standards set forth in the Magnuson-Stevens Act. *Id.*

II.    *Factual Background*

Plaintiff Martha's Vineyard/Dukes County Fishermen's Association is comprised of fishermen and "other active participants in local, state, regional and federal fisheries management, with direct interests in maintaining abundant populations of river herring and shad." Compl. ¶ 10. River herring and shad are anadromous species of herring that are born in fresh water and then migrate to the ocean before returning to the fresh water where they were born in the spring and early summer to spawn.[1] *Id.* ¶¶ 10, 20. The Association alleges that it has observed a "drastic decline" in the number of river herring that return to Dukes County. *Id.* ¶ 10. River herring and shad often swim in mixed-stock schools of fish, including Atlantic herring or mackerel. *Id.* ¶¶ 10, 32. Industrial mid-water trawlers who use small mesh nets to target other species, such as the Atlantic herring or mackerel, regularly catch as bycatch river herring and shad, which are

---

[1] "River herring" is the collective term for two species of fish—the alewife and the blueback herring—because the two species are difficult to distinguish from each other and are managed as a single stock. Compl. ¶ 17. Similarly, "shad" is the collective term for two species of fish—the American shad and the hickory shad. Compl. ¶ 19.

discarded dead at sea.  *Id.* ¶ 33.  Plaintiffs contend the decline correlates to the increase of

mid-water trawling for herring and mackerel.  *Id.* ¶ 10.  The Association and its members

rely upon the river herring and shad as part of their economic base.  *Id.*

    Michael Flaherty is a recreational fisherman from Massachusetts, and is a former

Vice President of the Massachusetts Striped Bass Association.  Compl. ¶ 11.  He has

been a recreational fisherman for over thirty-five years, and presently fishes for striped

bass.  *Id.*  Striped bass is a species that thrives when it consumes river herring.  *Id.*  In the

past, Flaherty has fished for river herring to use as bait or consume as food.  *Id.*

Previously, he was able to fish at his local river herring run and was allowed to catch up

to forty-eight fish per week.  *Id.*  Because the Commonwealth of Massachusetts has

banned the harvesting of river herring in the State, Flaherty is no longer able to fish for

river herring.  *Id.*

    Plaintiffs first filed this lawsuit on September 20, 2010, and they then filed an

amended complaint on December 13, 2010.  On January 14, 2010, the State defendants

filed a motion to dismiss count three of plaintiffs' amended complaint.  For the following

reasons, the State defendants' Motion to Dismiss is GRANTED.

## STANDARD OF REVIEW

    A court may dismiss a complaint, or any portion of it, that does not fall within the

court's subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Where a motion to dismiss

under Rule 12(b)(1) makes a facial attack on the complaint, the reviewing court "must

accept as true all material allegations on the complaint, and must construe the complaint

in favor of the complaining party."  *Ord v. Dist. of Columbia*, 587 F.3d 1136, 1140 (D.C.

Cir. 2009) (internal citation and quotation marks omitted). "Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

A court may also dismiss a complaint, or any portion of it, for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, however, the court may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). To survive a motion to dismiss, a complainant must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In evaluating a Rule 12(b)(6) motion, the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks omitted). However, factual allegations, even though assumed to be true, must still "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

7

## LEGAL ANALYSIS

### I.    *The APA is Inapplicable*

A plaintiff must have a right to pursue relief against a defendant to state a claim

upon which relief may be granted. *See Alexander v. Sandoval*, 532 U.S. 275, 288 (2001);

*FDIC v. Meyer*, 510 U.S. 471, 484 (1994). "The determination of who can seek a remedy

has significant consequences for the reach of federal power"; the "decision to extend the

cause of action is for Congress, not for [courts]." *Stoneridge Inv. Partners, LLC v.

Scientific-Atlanta Inc.*, 552 U.S. 148, 165 (2008). The State defendants contend that

plaintiffs do not have a private right of action against the ASMFC or the ASMFC

Commissioners. *See* State Defs.' Mot. for Summ. J. at 13 ("Defs.' Mot."), Jan. 14, 2011.

I agree.

Plaintiffs rely in their Complaint on the APA's judicial review provisions as the

source of their right of action against the ASMFC. Compl. ¶¶ 6, 8, 139-40. Examination

of the terms of the APA, however, reveals that the ASMFC does not fall within the scope

of the statute. By its own terms, judicial review is limited to actions taken by agencies, as

defined by the statute. *See* 5 U.S.C. § 702 (2006) ("A person suffering legal wrong

because of agency action, or adversely affected or aggrieved by agency action . . . is

entitled to judicial review."). Under the APA, the term "agency" is defined as an

"authority of the Government of the United States." 5 U.S.C. § 701(b)(1) (2006); *see

also Old Town Trolley Tours of Wash., Inc. v. Wash. Metro. Area Transit Comm'n*, 129

F.3d 201, 204 (D.C. Cir. 1997). The ASMFC—a collection of states—does not fit within

this definition.

8

The ASMFC is not an authority of the United States—it is an entity created by and composed of States. The Commission's membership includes State fishery officials, State legislators, and public representatives appointed by State governors. ASMFC Compact, art. III. The powers and duties of the Commission are set forth in the interstate compact itself. *See id.* The Commission's authority is not federal in nature; it is simply a state cooperative agreement in which the member States have agreed to work in coordination to "promote the better utilization of the fisheries." *Id.*, art. I. There is absolutely no indication that the contracting member States agreed to create a federal agency. The ASMFC, therefore, is separate from the Federal Government. Indeed, the Atlantic Coastal Fisheries Act plainly delineates coastal fishery management responsibility between the States and the Federal Government, with each entity playing a separate role. The language makes clear that primary responsibility of managing coastal fisheries rests with the States, and that the Federal Government's role is simply supporting. *See* 16 U.S.C. § 5101(a)(4) (2006); *see also ASMFC*, 609 F.3d at 533.

In a recent Second Circuit opinion, the court addressed this very issue and held that the ASMFC is not an "agency" within the meaning of the APA and, therefore, not subject to judicial review. *ASMFC*, 609 F.3d at 527, 531. As the Second Circuit explained, "[a]lthough the Commission acts in parallel with the federal government in managing the [stock], it exists outside the federal administrative framework . . . [a]nd, it would upset the federal-state balance to subject its actions to accountability measures devised to restrain the actions of federal authorities." *Id.* at 532 (internal citation and quotation marks omitted). Fish—such as the river herring and shad—travel between state

9

and federal waters; thus, coordination between the coastal member States and Federal Government is essential. "[T]he fact that federal and state entities act toward a common goal does not convert the state-or interstate-body into a federal one." *ASMFC*, 609 F.3d at 533.

Further, despite the Plaintiffs' contentions, the ASMFC is not a quasi-federal agency. The "quasi-federal agency" doctrine itself is quite uncertain in our Circuit; indeed, very few cases support its existence.[2] *See Elcon Enters. v. Wash. Metro. Area Transit Auth.*, 977 F.2d 1472, 1480 (D.C. Cir. 1992) (assuming that WMATA is a federal agency, and neither upholding nor rejecting a quasi-federal doctrine); *The Bootery, Inc. v Wash. Metro. Area Transit Auth.*, 326 F. Supp. 794 (D.D.C. 1971); *Otis Elevator Co., v. Wash. Metro. Area Transit Auth.*, 432 F. Supp. 1089, 1093-94 (D.D.C. 1976). Further, the doctrine is incompatible with the modern doctrine that causes of action are created by Congress, *not* federal courts, "no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286; *Stoneridge*, 552 U.S. at 164-65.

Finally, even assuming *arguendo* the legitimacy of the quasi-federal agency doctrine, the ASMFC does not fall within the doctrine. Plaintiffs cite to a district court case in the Eastern District of New York, which, relying on dicta from cases in the Third

---

[2] The existing cases each involved an atypical interstate compact entity—the Washington Metropolitan Area Transit Authority ("WMATA"). In *The Bootery, Inc. v Wash. Metro. Area Transit Auth.*, 326 F. Supp. 794, 798-99 (D.D.C. 1971), the case which first addressed the "quasi-federal agency" concept, the court specifically noted in its holding that the United States, which at the time had direct authority over the District of Columbia, was a party to the Compact at issue.

and Eighth Circuits, identifies three factors to determine whether a compact authority

warrants a quasi-federal agency classification: "(1) whether the originating compact is

governed, either explicitly or implicitly, by federal procurement regulations; (2) whether

a private right of action is available under the compact; and (3) the level of federal

participation." *New York v. Gutierrez*, 623 F. Supp. 301, 308-09 (E.D.N.Y. 2009), *rev'd*

*on other grounds* (internal citation and quotation marks omitted). However, plaintiffs

concede, as they must, that the originating compact is not governed by federal

procurement regulations and that a private right of action is not available under the

compact, and that, therefore, the analysis depends on the level of federal participation.

Pls.' Opp'n to Defs.' Mot. for Summ. J. ("Pls.' Opp'n") at 60, Feb. 16, 2011. As

discussed above, the Federal Government's participation in the Compact is minimal—its

role is simply to support the member States. The Compact itself exists between the

contracting States. *See ASMFC*, 609 F.3d at 535 ("A finding that the ASMFC is a 'quasi-

federal' agency would be in tension with its government Compact, which serves as a

contractual agreement between the member states."). The Commission is an entity

created by and composed of States, and its authority is not federal in nature. *See id.*

("The structure and composition of the ASMFC weigh against characterizing it as a

'quasi-federal' agency."). Thus, the ASMFC is neither a quasi-federal agency nor a

federal agency.[3] Not surprisingly, the Second Circuit reached the same conclusion when

it held that the ASMFC is not a quasi-federal agency. *See id.* at 531.

---

[3] Additionally, neither the Compact nor any other relevant statute, such as the Atlantic
Coastal Fisheries Act, creates a private right of judicial review of ASMFC decisions.

11

Therefore, the State Defendants' Motion to Dismiss Count III as to the ASMFC is GRANTED.

## II.    No Private Right of Action Against the ASMFC Commissioner Defendants

In addition to the ASMFC, Plaintiffs have named as defendants thirty of the Commission's forty-five Commissioners.  For the same reasons that the claims against the Commission must be dismissed, the claims against the Commissioners must also be dismissed; plaintiffs have no private right of action.  Just as the Commission itself is not a federal agency, neither are the Commissioners.  The Commissioners are State actors, specifically, State fishery officials, State legislators, and public representatives appointed by State governors.  Further, the Commissioners are members of a non-federal entity, as discussed above.  Therefore, the States defendants' Motion to Dismiss Count III as to the Commissioners must also be GRANTED.

---

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Sandoval*, 532 U.S. at 286.  To create a private cause of action, a statute "must be phrased in terms of the persons benefited." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (internal citation omitted).  Further, a plaintiff suing under an implied right of action "must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Id.* at 285 (quoting *Sandoval*, 532 U.S. at 286).  As plaintiffs have conceded, no language in the ASMFC Compact provides or even implies a private right of action.  Pls.' Opp'n at 60.  Nor is there any evidence that Congress intended to confer rights on private parties.  Likewise, there is no evidence that Congress intended to create a private right of action against the ASMFC in the Atlantic Coastal Fisheries Act.  Indeed, there is no language at all that provides for judicial review of ASMFC decisions.  Should a member State fail to implement a FMP developed by the Commission, the Secretary of Commerce—not the federal judiciary—is charged with resolving disputes over the non-implementation of a plan.  *See* 16 U.S.C. § 5106 (2006) (authorizing the Secretary, at his discretion, to impose and enforce a federal moratorium based on his independent findings of noncompliance).  Although Congress could have, it chose not to authorize the federal judiciary to review the ASMFC's decisions.  Further, for the same reasons, neither the Compact nor the Atlantic Coastal Fisheries Act confers a private right of action against the individual Commissioner-defendants.

12

## CONCLUSION

For the foregoing reasons, the State defendants' Motion to Dismiss, ECF No. 26, is GRANTED.  An appropriate order will accompany this memorandum opinion.


RICHARD J. LEON
United States District Judge